LLOYD A. BOOKMAN (State Bar No. 89251)
E-Mail: lbookman@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-8181

DAVID J. VERNON (State Bar No. 286642)
E-Mail: dvernon@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
401 9th Street, NW, Suite 550
Washington, DC 20004
Telephone: (202) 580-7700
Facsimile: (202) 580-7719

Attorneys for Plaintiffs Enloe Medical
Center et al.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENLOE MEDICAL CENTER; ANTELOPE VALLEY HEALTHCARE DISTRICT d/b/a ANTELOPE VALLEY HOSPITAL; COUNTY OF SAN BERNARDINO d/b/a ARROWHEAD REGIONAL MEDICAL CENTER; HEART HOSPITAL OF BK, LLC d/b/a BAKERSFIELD HEART HOSPITAL; BEVERLY COMMUNITY HOSPITAL ASSOCIATION d/b/a/ BEVERLY HOSPITAL; CASA COLINA HOSPITAL AND CENTERS FOR HEALTHCARE d/b/a CASA COLINA HOSPITAL; EISENHOWER MEDICAL CENTER; CITY OF EL CENTRO d/b/a EL CENTRO REGIONAL MEDICAL CENTER; GOOD SAMARITAN HOSPITAL, A CALIFORNIA LIMITED PARTNERSHIP d/b/a GOOD SAMARITAN HOSPITAL; HENRY MAYO NEWHALL MEMORIAL HOSPITAL d/b/a HENRY MAYO | Case No. **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR SUMS DUE UNDER THE MEDICARE ACT** |

1  NEWHALL HOSPITAL; CHA
   HOLLYWOOD MEDICAL CENTER,
2  L.P. d/b/a HOLLYWOOD
   PRESBYTERIAN MEDICAL
3  CENTER; KAWEAH DELTA
   HEALTH CARE DISTRICT d/b/a
4  KAWEAH DELTA MEDICAL
   CENTER; KERN COUNTY
5  HOSPITAL AUTHORITY d/b/a KERN
   MEDICAL CENTER;
6  MADERA COMMUNITY
   HOSPITAL; MARTIN LUTHER
7  KING JR.-LOS ANGELES (MLK-LA)
   HEALTHCARE CORPORATION
8  d/b/a MARTIN LUTHER KING, JR.
   COMMUNITY HOSPITAL;
9  METHODIST HOSPITAL OF
   SOUTHERN CALIFORNIA;
10 DEANCO HEALTHCARE, LLC d/b/a
   MISSION COMMUNITY HOSPITAL;
11 OAK VALLEY HOSPITAL
   DISTRICT; OLYMPIA HEALTH
12 CARE, LLC d/b/a OLYMPIA
   MEDICAL CENTER; OROVILLE
13 HOSPITAL; PACIFICA OF THE
   VALLEY CORPORATION d/b/a
14 PACIFICA HOSPITAL OF THE
   VALLEY; PIONEERS MEMORIAL
15 HEALTHCARE DISTRICT;
   POMONA VALLEY HOSPITAL
16 MEDICAL CENTER; REDLANDS
   COMMUNITY HOSPITAL; COUNTY
17 OF RIVERSIDE d/b/a RIVERSIDE
   UNIVERSITY HEALTH SYSTEM –
18 MEDICAL CENTER a/k/a
   RIVERSIDE COUNTY REGIONAL
19 MEDICAL CENTER; SAN ANTONIO
   REGIONAL HOSPITAL INC. d/b/a
20 SAN ANTONIO REGIONAL
   HOSPITAL; SAN GORGONIO
21 MEMORIAL HEALTHCARE
   DISTRICT d/b/a SAN GORGONIO
22 MEMORIAL HOSPITAL; SIERRA
   VIEW LOCAL HEALTH CARE
23 DISTRICT d/b/a SIERRA VIEW
   MEDICAL CENTER; SAINT AGNES
24 MEDICAL CENTER; TRI-CITY
   HOSPITAL DISTRICT d/b/a TRI-
25 CITY MEDICAL CENTER;
   UNIVERSITY OF CALIFORNIA
26 BOARD OF REGENTS d/b/a
   UNIVERSITY OF CALIFORNIA
27 IRVINE MEDICAL CENTER;
   UNIVERSITY OF SOUTHERN
28 CALIFORNIA d/b/a USC VERDUGO

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

2

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HILLS HOSPITAL; VALLEY
PRESBYTERIAN HOSPITAL

        Plaintiffs,

      vs.

ALEX M. AZAR II, Secretary,
United States Department of Health and
Human Services, in his official
capacity,

        Defendant.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

The above-captioned Plaintiffs that own and operate thirty-three general acute-care hospitals (collectively the "Hospitals"), bring this action by and through their undersigned attorneys against defendant Alex M. Azar II, in his official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

1.    This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* The Hospitals challenge the Secretary's unprecedented and unlawful exclusion of the data of urban hospitals that have reclassified to rural status from the calculation of the rural floor, which has resulted in a reduction to their Medicare inpatient hospital payments for federal fiscal year ("FFY") 2020 (the "Rural Floor Data Exclusion Policy").

2.    Medicare payments for inpatient hospital services are adjusted to reflect the hospital labor costs in the area where the hospital is located through application of the "wage index," which the Secretary is required by statute to update annually based on actual data of the hospitals in each wage area. Congress has afforded hospitals the option, when eligible, to reclassify to other urban wage areas and/or rural wage areas for wage index (and other) purposes. Additionally, Congress established rural floor provisions that protect hospitals located in urban areas from being paid

3

1   using a wage index value that is lower than that wage index value assigned to the rural

2   area of the state in which the hospitals are located.  Each state has one rural wage

3   index for the entire state, but states will have multiple wage indices for the urban areas

4   of the state with a separate wage index for each urban area.

5       3.   In the FFY 2020 Hospital Inpatient Prospective Payment System

6   ("IPPS") Final Rule, the Secretary for the first time removed data of hospitals that

7   have reclassified from urban to rural status from the calculation of the rural floor.

8   Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care

9   Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy

10   Changes and Fiscal Year 2020 Rates, 84 Fed. Reg. 42,044, 42,332-36 (Aug. 16, 2019)

11   ("FFY 2020 IPPS Final Rule").  The effect of the exclusion of rural reclassified

12   hospitals' wage data from the rural floor calculation has resulted in a reduction in the

13   rural floor value below what would have otherwise resulted without the

14   implementation of the Rural Floor Data Exclusion Policy.  This has produced a

15   significant reduction in the Hospitals' IPPS payments. (The Hospitals expect their

16   FFY 2020 reduction to be approximately $34.7 million).

17       4.   The Secretary asserted in the FFY 2020 IPPS Final Rule that he has the

18   authority to implement this Rural Floor Data Exclusion Policy under 42 U.S.C.

19   § 1395ww(d)(8)(E) and the rural floor statutes because 42 U.S.C. § 1395ww(d)(8)(E)

20   does not specify where the wage data of reclassified hospitals must be included and

21   that the rural floor statutes also do not specify how the rural floor wage index is to be

22   calculated or what data are to be included in the calculation.  84 Fed. Reg. at 42,332.

23   However, 42 U.S.C. § 1395ww(d)(8)(E) does specify how urban to rural reclassified

24   hospitals are to be treated "[f]or purposes of subsection (d)"—the subsection of the

25   Medicare Act which establishes the IPPS and which includes the rural floor

26   provisions—and requires that the Secretary treat the urban to rural reclassified

27   hospitals "as being located in the rural area (as defined in paragraph (2)(D)) of the

28   State in which the hospital is located."  Section 1395ww(d)(8)(E) does not authorize

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

1  the Secretary to create a distinction in the treatment of hospitals being geographically

2  rural or hospitals that are rural due to reclassification under Section 1395ww(d)(8)(E),

3  and Section 1395ww(d) does not create such a distinction.   Moreover, the plain

4  language of both rural floor statutory provisions require that the wage index for the

5  affected hospitals not be less than the precise same area wage index that applies to

6  hospitals physically located in rural areas of the applicable state.   Congress did not

7  create a subcategory of rural hospitals that are eligible for the rural wage index but

8  whose wages are not included in the calculation of a state's rural floor, and the

9  Secretary does not have the statutory authority to create one.

10      5.      The Rural Floor Data Exclusion Policy is also arbitrary and capricious.

11  The Secretary contends that the Rural Floor Data Exclusion Policy is necessary to

12  address consequences of the rural reclassification statute supposedly unanticipated by

13  Congress.   However, the rural reclassification statute was inserted into the Medicare

14  statute *after* both rural floor provisions were added to it.   There is no basis for the

15  Secretary to allege that Congress did not know what it was doing when it mandated

16  that urban to rural reclassified hospital be treated as rural for all purposes under

17  Section 1395ww(d), which already included the rural floor provisions.   Therefore, the

18  Secretary's offered explanation for why it was proper to institute the Rural Floor Data

19  Exclusion Policy runs counter to the evidence before the agency and is arbitrary and

20  capricious.

21      6.      Effective October 1, 2019, Medicare payments to the Hospitals have

22  been and continue to be reduced, causing an expected FFY 2020 reduction to

23  Hospitals of approximately $34.7 million.   The Hospitals, therefore, respectfully ask

24  this Court to declare invalid and vacate the Rural Floor Data Exclusion Policy, order

25  the Secretary to recalculate the Hospitals' FFY 2020 IPPS payments after removing

26  the effect of the Rural Floor Data Exclusion Policy, and make the additional FFY

27  2020 IPPS payments due to the Hospitals plus interest calculated under 42 U.S.C.

28  § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency action), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus).

8.     Venue lies in the Central District of California under 42 U.S.C. § 1395oo(f)(1), because a plurality of the Hospitals is located in this judicial district, and under 28 U.S.C. § 1391.

## PARTIES

9.     At all times relevant to this action, the Hospitals were Medicare-participating, general acute-care hospital-providers under the Medicare program.  All are California hospitals that provide critical acute care services to their communities—services that are even more essential in the midst of a protracted public health pandemic.  The Hospitals include public hospitals, private non-profit hospitals, and investor-owned hospitals.   And many, if not all, of the Hospitals serve the underserved, offering a disproportionate share of needed care to the most vulnerable members of our communities.  For example,

   a. Enloe Medical Center is a 298-bed nonprofit hospital in Chico, California.  It is one of two Level II Trauma Centers north of Sacramento and it houses the region's only Level II Neonatal Intensive Care Unit.  Enloe Medical Center operates its own air ambulance program so that it can respond to emergencies within 75 miles of the medical center, serving Butte, Tehama, Glenn, Plumas, Colusa, Sierra, Yuba, and Lassen counties.   Enloe Medical Center serves a rural and a fairly isolated community.

   b. Kaweah Delta Medical Center is a 581-bed public hospital that is a certified level III Trauma Center.  It is the only hospital located in Visalia, the largest hospital in Tulare County, and it offers comprehensive health services in what is a medically underserved

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

area.   Kaweah Delta Medical Center serves a significantly disproportionate number of low-income patients.

Not even one of the Hospitals received any benefit from the Rural Floor Data Exclusion Policy in FFY 2020.

10.    The Hospitals with their Medicare provider numbers are set forth in Exhibit 1, which contains the "Schedules of Providers" from the underlying administrative appeal.  Although some of the Hospitals have been known by various names over the years, on the Schedules of Providers, the Hospitals usually are listed by their "dba" only and can be identified definitively by their Medicare provider numbers.   As shown in the Schedules of Providers, the Hospitals' fiscal years sometimes are not the same as the FFY.  One FFY may overlap with two hospital fiscal years. If so, then only a portion of the hospital's fiscal years fall within the FFY that is the subject of this lawsuit.  For example, for a hospital's fiscal year that ends on December 31, the period of FFY 2020 from October 1, 2019 through December 31, 2019, would fall within the hospital's fiscal year 2019, and the period of FFY 2020 from January 1, 2020 through September 30, 2020, would fall within the hospital's fiscal year 2020.

11.    Defendant Alex M. Azar II is the Secretary of the Department of Health and Human Services, the federal department which includes the Centers for Medicare & Medicaid Services ("CMS").   The Secretary, the federal official responsible for administration of the Medicare program, has delegated his responsibility to CMS. The Secretary is responsible for the action at issue in this case.

**The Medicare Appeals Process**

12.    If a provider is dissatisfied with a "final determination" as to the amount of its Medicare IPPS payments, the provider may appeal to the Provider Reimbursement Review Board ("PRRB") if it meets the requirements set forth in 42 U.S.C. § 1395oo(a), including that the "amount in controversy is $10,000 or more," and "such provider files a request for a hearing within . . . 180 days after notice of the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8181 F: (310) 551-8181

1  Secretary's final determination." 42 U.S.C. § 1395oo(a)(1)(A)(ii), (2), (3). A group

2  of providers may bring such an appeal if the matter in controversy involves a common

3  question of fact or interpretation of law or regulations and the amount in controversy

4  is, in the aggregate, $50,000 or more. 42 U.S.C. § 1395oo(b).

5       13.    The publication of IPPS rates in the Federal Register, including the wage

6  indices, constitutes a "final determination" that may be appealed to the PRRB. 42

7  U.S.C. § 1395oo(a). The PRRB lacks the authority to adjudicate the validity of the

8  Secretary's regulations and CMS Rulings. 42 C.F.R. § 405.1867.

9       14.    If a hospital's jurisdictionally proper appeal involves a question of law

10 that the PRRB is without authority to decide, the PRRB may, through its own motion

11 or upon the request of the hospital, grant expedited judicial review ("EJR") of the

12 appeal in accordance with 42 U.S.C. § 1395oo(f)(1). If EJR is granted, a hospital may

13 seek judicial review of the final determination without a PRRB hearing. *Id.*

14      15.    Judicial relief is available under the equitable remedy of mandamus

15 where a hospital has a clear right to the relief sought and the Secretary has a defined

16 and non-discretionary duty to honor that right. *See Monmouth Med. Ctr. v. Thompson*,

17 257 F.3d 807 (D.C. Cir. 2001); *Lopez v. Heckler*, 725 F.2d 1489, 1507-08 (9th Cir.

18 1984), *vacated and remanded on other grounds, Heckler v. Lopez*, 469 U.S. 1082

19 (1984); *Loma Linda Univ. Med. Ctr. v. Leavitt*, 492 F.3d 1065, 1074 (9th Cir. 2007)

20 (citing *Monmouth Med. Ctr. v. Thompson* in recognition that an agency intermediary

21 may be bound by a writ of mandamus against the Secretary).

22                                   **The APA**

23      16.    Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review

24 after the PRRB orders EJR "shall be tried pursuant to the applicable provisions under

25 chapter 7 of title 5 . . ." of the U.S. Code, which contains the APA. Under the APA,

26 a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and

27 conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise

28 not in accordance with law." 5 U.S.C. § 706(2)(A). Furthermore, a "reviewing court

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

8

6017820.5

1 shall hold unlawful and set aside agency action, findings, and conclusions found to be

2 . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory

3 right." 5 U.S.C. § 706(2)(C).

4     17.    Additionally, a "reviewing court shall hold unlawful and set aside agency

5 action, findings, and conclusions found to be . . . without observance of procedure

6 required by law." 5 U.S.C. § 706(2)(D). The APA requires that the agency provide

7 notice of proposed rulemaking, afford interested parties an opportunity to comment

8 on the proposed rulemaking, and consider the relevant matters presented. *See* 5

9 U.S.C. § 553.

10                 **PROCEDURAL BACKGROUND**

11     18.    This action arises from a PRRB optional group appeal challenging the

12 Hospitals' IPPS payments for FFY 2020 on the grounds that those payments were

13 (and continue to be) improperly understated because of the Rural Floor Data

14 Exclusion Policy. Specifically, the Secretary's invalid exclusion of the rural

15 reclassified hospitals' wage data from the rural floor calculation caused the rural floor

16 value to be lower than it would have otherwise been, which improperly understated

17 the Hospitals' FFY 2020 IPPS payments. Each of the Hospitals appealed the Rural

18 Floor Data Exclusion Policy in the FFY 2020 IPPS Final Rule by filing timely and

19 jurisdictionally valid appeals in accordance with 42 U.S.C. § 1395oo.

20     19.    The Hospitals requested that the PRRB grant EJR on July 2, 2020,

21 because, although the PRRB had jurisdiction over their appeals, the PRRB lacks the

22 authority to review the validity of the Rural Floor Data Exclusion at issue.

23     20.    The PRRB's August 13, 2020 letter found it had jurisdiction over the

24 Hospitals' appeals and granted the Hospitals' EJR requests. A copy of this letter is

25 attached as Exhibit 2.

26     21.    This action is timely filed within 60 days of the PRRB's EJR decision

27 under 42 U.S.C. § 1395oo(f).

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

9

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

## General Background of the Medicare Program

22. The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. § 1395c.  The Hospitals entered into written agreements with the Secretary to provide hospital services to Medicare-eligible individuals as "provider[s] of services" under the Medicare Act.  42 U.S.C. § 1395cc.

23. The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  *See* 42 U.S.C. § 1395kk; Health, Education, and Welfare, Reorganization Order, 42 Fed. Reg. 13,262 (Mar. 9, 1977).

24. The Medicare program consists of Part A, which covers inpatient hospital services and certain other institutional services; Part B, which covers physician services and certain outpatient services; Part C, which covers managed health care plans; and Part D, which provides prescription drug coverage.  Only Part A is at issue in this action.

25. CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. § 401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, the Secretary issues other subregulatory documents to implement the Medicare program, including the IPPS, which generally do not have the force and effect of law.  The Medicare Act requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ."  42 U.S.C. § 1395hh(a)(2).  Thus, the Medicare Act prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary as a regulation after notice-and-comment rulemaking.

6017820.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

**A.    *IPPS Payment***

26.    Effective for cost reporting years beginning on or after October 1, 1983, Congress enacted statutes requiring the Secretary to implement the IPPS to pay hospitals, including the Hospitals here, for the operating costs related to providing inpatient hospital services to Medicare beneficiaries.

27.    Under the IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals.  Rather, they are based on predetermined rates for each Medicare patient discharged from the hospital.  These rates take into account the diagnosis of the patient determined at the time of discharge, subject to certain payment adjustments.  42 U.S.C. § 1395ww(d)(1)-(5).  The IPPS relies on a national base payment rate or "standardized amount" that is adjusted for geographic factors and then multiplied by a weighting factor determined based on the patient's diagnoses.

28.    The standardized amount consists of a labor-related portion and a nonlabor-related portion.  The labor-related portion is the proportion "of hospitals' costs which are attributable to wages and wage-related costs."  42 U.S.C. § 1395ww(d)(3)(E).  The labor-related portion for FFY 2020 is generally 68.3% of the standardized amount, 84 Fed. Reg. at 42,325.  However, Congress set the labor-related portion at 62% of the standardized amount for hospitals with a wage index less than or equal to one (1.0000). 42 U.S.C. § 1395ww(d)(3)(E)(ii).

**B.    *The Area Wage Index Adjustment***

29.    The Secretary is required to adjust the labor-related portion of the standardized amount "for area differences in hospital wage levels . . . ."  42 U.S.C. § 1395ww(d)(3)(E).  To do so, the Secretary must calculate "a factor . . . reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level."  42 U.S.C. § 1395ww(d)(3)(E).  This factor is known as the wage index value.

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

30.     The Secretary is required to update the wage index annually "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States."   42 U.S.C. § 1395ww(d)(3)(E).   ("Subsection (d) hospitals" are those hospitals paid under the IPPS.)   In addition, "[n]ot less often than once every 3 years the Secretary (through such survey or otherwise) shall measure the earnings and paid hours of employment by occupational category . . . ."   *Id.*     The Secretary sets forth wage index determinations in the annual IPPS final rule.   *See* 84 Fed. Reg. at 42,300.   Annual wage index updates must not increase aggregate payments and, thus, are budget neutral: "Any adjustments or updates made under [42 U.S.C. § 1395ww(d)(3)(E)] for a fiscal year . . . shall be made in a manner that assures that the aggregate payments under [42 U.S.C. § 1395ww(d)] in the fiscal year are not greater or less than those that would have been made in the year without such adjustment."   42 U.S.C. § 1395ww(d)(3)(E).

31.     To implement this statute, the Secretary obtains the actual wage data used to calculate the wage index from the Medicare cost report that each Medicare-participating hospital is required to file annually. These data are taken from the Hospital Wage Index Occupational Mix Survey, payroll records, contracts, and other wage-related documentation.   The data are reviewed and evaluated by Medicare Administrative Contractors ("MACs") in a 16 to 18 month "Hospital Wage Index Development" process in order to ensure that the data, and therefore the wage index values, are accurate.   In computing the wage index, the Secretary uses the data that result from the Hospital Wage Index Development process, determines an "average hourly wage" for each labor market area (total wage costs divided by total hours for all hospitals in the geographic area), which is compared against a national average hourly wage (total wage costs divided by total hours for all hospitals nationally).   *See* 84 Fed. Reg. at 42,305.

6017820.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

*C.* *Geographic Reclassification*

32.     In calculating the area wage index under 42 U.S.C. § 1395ww(d)(3)(E), the Secretary assigns wage index values to specific geographical areas.  Generally, rural hospitals receive a wage index that applies to all rural areas in their state.  Urban hospitals, instead, are grouped into Core Based Statistical Areas ("CBSAs") in which they are physically located, and a separate wage index value is established for each CBSA.

33.     In 1989, Congress recognized that in some situations, a hospital in one geographical area may compete for the same labor pool as hospitals in a nearby, larger urban area, but that such hospital receives lower reimbursement because it is located in a lower wage index CBSA.  As a result, Congress amended the Medicare Act to allow a hospital to seek reclassification from its geographical-based wage area to a nearby wage area for payment purposes if it met certain criteria established by the Medicare Geographic Classification Review Board ("MGCRB").  *See* 42 U.S.C. § 1395ww(d)(10).

34.     The geographic reclassification rules dictate that "an individual hospital may be redesignated from an urban area to another urban area, from a rural area to another rural area, or from a rural area to another urban area for the purposes of using the other area's wage index value." 42 C.F.R. § 412.230(a)(1)(ii).

35.     When this occurs, the wage and hour data of a hospital that has obtained a geographic reclassification is typically counted both in the hospital's home CBSA and in the CBSA to which it has reclassified.[1]  *See* 42 U.S.C. § 1395ww(d)(8)(C)(i)-(ii); 76 Fed. Reg. 51,476, 51,596 (Aug. 18, 2011).

---

[1] There are statutory exceptions to this typical calculation, however. *See* 42 U.S.C. § 1395ww(d)(8)(C)(i)-(ii).

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

*D.*     **_Urban to Rural Reclassification_**

36.    Ten years after geographic reclassification was established (and after the creation of the rural floor provisions as discussed below), Congress enacted the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 ("BBRA"). Pub. L. 106-113, 113 Stat. 1501 (Nov. 29, 1999). Specifically, BBRA § 401 states that:

> [f]or purposes of this subsection, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary "***shall treat the hospital as being located in the rural area*** (as defined in paragraph (2)(D)) of the State in which the hospital is located."

42 U.S.C. § 1395ww(d)(8)(E) (emphasis added).

37.    Hospitals that qualify for urban-to-rural reclassification (those hospitals described in clause (ii) of 42 U.S.C. § 1395ww(d)(8)(E)) are subsection (d) hospitals—hospitals paid under IPPS—that are located in an urban area (as defined in paragraph (2)(D)) and satisfy one of four criteria established by Congress, including but not limited to, the hospital is located in a rural census tract, the hospital is in an area designated as a rural area, or the hospital would qualify as a rural referral center if the hospital were located in a rural area. 42 U.S.C. § 1395ww(d)(8)(E)(ii).

38.    In the Conference Report accompanying BBRA § 401, Congress noted that "Hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals . . . ." H.R. Conf. Rep. No. 106-479, 512 (1999).

39.    The wage and hour data of an urban hospital that has reclassified as rural is counted both in the hospital's home CBSA and in the rural area of the state where the hospital is located.[2] 76 Fed. Reg. at 51,596.

---

[2] One exception to this policy is that the wage and hour data of hospitals
(footnote continued)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

*E.*     <u>*Both a Rural Reclassification and a Geographic Reclassification*</u>

40.    While Congress permitted both rural reclassification and geographic reclassification independently, the Secretary adopted a regulation which prevented a hospital from doing both reclassifications simultaneously. After both the Third and Second Circuits determined that the Secretary's regulation was counter to the plain language of the rural reclassification statute—42 U.S.C. § 1395ww(d)(8)(E),—on April 21, 2016, the Secretary revised his regulations to allow a hospital to reclassify to both a rural hospital and also reclassify to a different geographic area. *See* 81 Fed. Reg. 56,762, 56,926 (Aug. 22, 2016); *Geisinger Community Medical Center v. Secretary, United States Department of Health and Human Services,* 794 F.3d 383 (3d Cir. 2015); *Lawerence + Memorial Hospital v. Burwell,* 812 F.3d 257 (2d Cir. 2016).

41.    If a hospital has both a rural reclassification and a geographic reclassification, its wages are counted in the CBSA into which the hospital has reclassified with the geographic reclassification and in its home CBSA. 81 Fed. Reg. at 56,924. This is because the Secretary acknowledged that a geographic reclassification is made "solely for wage index payment purposes[,]" whereas a rural reclassification can confer "other rural benefits besides the wage index." *Id.*

*F.*     <u>*The Rural Floor Adjustment and National Budget Neutrality*</u>

42.    In addition to allowing a hospital to reclassify to a different area wage index, Congress established two "rural floor" provisions that protect hospitals located in urban areas from being paid at a wage index that is lower than that wage index assigned to the rural area of the state in which they are located.

43.    One of these rural floor provisions specifies that certain types of reclassifications, including geographic reclassifications, "may not result in the

---

reclassifying into the rural area of a state will not be counted if the wage and hour data of reclassified hospitals overall would reduce the rural wage index. 76 Fed. Reg. at 51,596.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

6017820.5

reduction of any county's wage index to a level below the wage index for rural areas in the State in which the county is located." 42 U.S.C. § 1395ww(d)(8)(C)(iii).  In other words, if an urban area's wage index is lower than the wage index assigned to the rural areas of the state due to certain Medicare reclassifications, the urban hospitals in that impacted county will receive the wage index of the state's rural wage index.

44.     The second rural floor provision was established in 1997 when Congress observed that the calculation of the wage index for all regions of a state can sometimes result in some urban hospitals being paid less than the average rural hospital in the state.  H.R. Rep. No. 105-149, at 1305 (1997).  To address this occurrence, Congress created a second "rural floor" in Section 4410(a) of the Balanced Budget Act of 1997 ("BBA").  Pub. L. 105-33, § 4410(a), 111 Stat. 251, 402 (1997) (uncodified as 42 U.S.C. § 1395ww note).  Specifically, BBA § 4410(a) states:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index applicable under such section to any hospital which is not located in a rural area (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww(d)(2)(D)) *may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State* in which the hospital is located.

(emphasis added).  This rural floor provides that the wage index assigned to the CBSA for an urban hospital must be at least as great as the wage index assigned to rural hospitals within the same state.

45.     In implementing the rural floor provisions, Section 3141 of the Affordable Care Act ("ACA") requires that a national budget neutrality adjustment be applied.  This means that any additional payments that hospitals receive as a result of the rural floors must be offset by a corresponding reduction to the standardized

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

16

1  amount.  The Secretary has codified these budget-neutrality provisions in 42 C.F.R.

2  § 412.64(e)(2) & (4).

3  ### THE RURAL FLOOR DATA EXCLUSION POLICY IN THE FFY 2020 IPPS

4  ### RULEMAKING

5  **A.**   **_The Rural Floor Data Exclusion Policy_**

6         46.    In the FFY 2020 IPPS Proposed Rule (the "Proposed Rule"), the

7  Secretary stated that there is a growing wage index disparity between low and high

8  wage index hospitals.   *See* 84 Fed. Reg. 19,158, 19,393-95 (May 3, 2019).

9  Referencing public comments received in response to a Request for Information on

10  wage index disparities included in the FFY 2019 IPPS Proposed Rule, as well as an

11  Office of Inspector General ("OIG") report from November 2018 wherein MedPAC,

12  an independent congressional advisory board, stated that the "policy is built on the

13  false assumption that hospital wage rates in all urban labor markets in a State are

14  always higher than the average hospital wage rate in rural areas of that State," the

15  Secretary asserted that "urban to rural reclassifications have stretched the rural floor

16  provision beyond a policy designed to address anomalies of some urban hospitals

17  being paid less than the average rural hospital in their States."  *Id.* at 19,396-97.  The

18  Secretary continued that as a result, he proposed "to remove urban to rural

19  reclassifications from the calculation of the rural floor."  *Id.*

20         47.    The Secretary asserted that the rural floor could be calculated without

21  including the wage data of urban hospitals that have reclassified as rural under 42

22  U.S.C. § 1395ww(d)(8)(E) because 42 U.S.C. § 1395ww(d)(8)(E) "does not specify

23  where the wage data of reclassified hospitals must be included."  *Id.*  The Secretary

24  continued that, "the rural floor statute [Section 4410 of Pub. L. 105-33] does not

25  specify how the rural floor wage index is to be calculated or what data are to be

26  included in the calculation."   *Id.*   Thus, the Secretary concluded that he has the

27  discretion to exclude the wage data of urban-to-rural reclassified hospitals from the

28  calculation of the rural floor.  *Id.*  Additionally, "for consistent treatment of urban

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

hospitals not reclassified as rural," the Secretary proposed to apply the provisions of 42 U.S.C. § 1395ww(d)(8)(C)(iii) "without including the wage data of urban hospitals that have reclassified as rural under section [1395ww](d)(8)(E) . . . (as implemented at § 412.103)."

48.     In the FFY 2020 IPPS Final Rule, the Secretary implemented the Rural Floor Data Exclusion Policy, as proposed.   84 Fed. Reg. at 42,332-42,336.   In justifying the adoption of the policy, the Secretary asserted that "as a result of hospital actions not envisioned by Congress, the rural floor is resulting in significant disparities in wage index . . . ."  *Id.* at 42,332.  The Secretary continued that the policy was "necessary and appropriate to address the unanticipated effects of rural reclassifications on the rural floor and the resulting wage index disparities, including the effects of the manipulation of the rural floor by certain hospitals."  *Id.* at 42,333.

49.     Support for the proposal, however, was far from unanimous.   The Secretary noted that he received many comments in opposition to the Rural Floor Data Exclusion Policy.  *Id.* at 42,334.  Most notably, the Secretary received comments "that excluding reclassified hospitals from the rural floor is plainly inconsistent with the statutory language."  *Id.*  In support for this position, these commenters explained that "the statute does not draw any distinction between the 'rural areas' used to calculate the rural floor under section 4410(a) of the Balanced Budget Act of 1997 and the 'rural areas' that reclassified hospitals are to be treated as located in under section [1395ww](d)(8)(E)."  *Id.*  The commenters further asserted that "Congress intended the term 'rural area' to have the same definition when applied to the rural floor and section [1395ww](d)(8)(E)" as "Congress did not create a subcategory of rural hospitals that are eligible for the rural wage index, but whose wages are not included in the calculation of a state's rural floor."  *Id.*  Finally, the commenters emphasized that Third and Second Circuit precedent "establishes that a reclassified hospital should be treated as a rural hospital for all purposes under IPPS, including wage reclassification."  *Id.* (citing *Geisinger Community Medical Center v. Secretary,*

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

1  *United States Department of Health and Human Services,* 794 F.3d 383 (3d Cir.

2  2015); *Lawrence + Memorial Hospital v. Burwell,* 812 F.3d 257 (2d Cir. 2016)).

3     50.   In response to these significant critiques, the Secretary acknowledged

4  that broader wage index reform must come from Congress, but nevertheless,

5  reasserted that he believes he has the authority to implement the Rural Floor Data

6  Exclusion Policy, because "Section [1395ww](d)(8)(E) . . . does not specify where

7  the wage data of reclassified hospitals must be included" and thus he has "discretion

8  to exclude the wage data of such hospitals from the calculation of the rural floor." 84

9  Fed. Reg. at 42,334.  The Secretary also restated that because "the rural floor statute

10 does not specify how the rural floor wage index is to be calculated or what data are to

11 be included in the calculation" that he also has "the discretion under the rural floor

12 statute to exclude the wage data of hospitals reclassified under section

13 [1395ww](d)(8)(E) . . . from the calculation of the rural floor."  *Id.*  Despite the

14 Secretary's assertion of authority based on alleged silence of the pertinent statutes, he

15 tacitly undermines his justification by noting that under the Rural Floor Data

16 Exclusion Policy, he "would continue to calculate the rural floor based on the physical

17 non-[Metropolitan Statistical Area] area of a state, which is the same rural area to

18 which a hospital is reclassified under section [1395ww](d)(8)(E) . . . ."  *Id.*

19     51.   The Secretary also asserted that the Rural Floor Data Exclusion Policy

20 was actually consistent with *Geisinger Community Medical Center v. Secretary,*

21 *United States Department of Health and Human Services,* 794 F.3d 383 (3d Cir. 2015)

22 and *Lawrence + Memorial Hospital v. Burwell,* 812 F.3d 257 (2d Cir. 2016) in which

23 both the Third and Second Circuits found that hospitals that reclassified from urban

24 to rural "must be considered rural for all purposes."  *Id.* at 42,335.  Without providing

25 a basis for the newfound distinction he was making, the Secretary stated that treating

26 a hospital as rural for all purposes does not mean the hospital's wage and hour data

27 has to be included in the rural floor calculation.  *Id.* at 42,334.  Moreover, in making

28 some of the same arguments rejected by the Third and Second Circuits, the Secretary

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

1  argued that "the strict reading of 'rural for all purposes' to which the commenters

2  subscribe is neither required by the text of the court decisions . . . nor appropriate from

3  a policy perspective." *Id.* at 42,335.  In support of this view that he could not follow

4  the "strict reading" required under 42 U.S.C. § 1395ww(d)(8)(E), the Secretary raised

5  potential ancillary impacts to his regulations and policies of treating reclassified

6  hospitals as rural for purposes under the IPPS.  *Id.*

7       52.     Thus, in the FFY 2020 IPPS Final Rule, the Secretary adopted the Rural

8  Floor Data Exclusion Policy.  84 Fed. Reg. at 42,336.  The result of this policy is that

9  effective October 1, 2019 and continuing until at least September 30, 2020, IPPS

10 payments to the Hospitals will be sizably reduced, with an estimated loss of $34.7

11 million.

## THE RURAL FLOOR DATA EXCLUSION POLICY VIOLATES THE MEDICARE ACT AND THE APA

13      53.     The Rural Floor Data Exclusion Policy in the FFY 2020 IPPS Final Rule

14 is invalid on several grounds, including, but not limited to, that it exceeds statutory

15 authority, is otherwise inconsistent with law, is arbitrary and capricious, is not

16 supported by the applicable rulemaking record, is an abuse of discretion, and is

17 otherwise defective both procedurally and substantively, as discussed below.

**A.** ***The Rural Floor Data Exclusion Policy Is Beyond the Secretary's Authority under 42 U.S.C. § 1395ww(d)(8)(E) and the Rural Floor Provisions***

**(1)     The Secretary's Rural Floor Data Exclusion Policy Is Contrary to the Plain Language of 42 U.S.C. § 1395ww(d)(8)(E)**

23      54.     Section 1395ww(d)(8)(E)(i) requires that the Secretary treat urban

24 hospitals that apply to be reclassified as rural and satisfy the applicable criteria "as

25 being located in the rural area . . . of the State in which the hospital is located."  The

26 Rural Floor Data Exclusion Policy is contrary to and violates the plain language of

27 Section 1395ww(d)(8)(E) because it does not treat reclassified urban hospitals as

28 being located in a rural area as it excludes such hospitals' data from the calculation of

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

20

6017820.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

1   the rural floor.  The Rural Floor Data Exclusion Policy thereby impermissibly creates

2   a distinction in the treatment of rural hospitals—the use of their data in the rural floor

3   calculation—that is not permitted by statute, as Section 1395ww(d) does not

4   distinguish between hospitals being geographically rural or hospitals that are rural due

5   to reclassification under Section 1395ww(d)(8)(E).

6   55.   In finalizing the Rural Floor Data Exclusion Policy, the Secretary

7   asserted that he has the authority to implement this policy under 42 U.S.C. §

8   1395ww(d)(8)(E)—the reclassification statute where "the Secretary shall treat the

9   [urban to rural reclassified] hospital as being located in the rural area (as defined in

10   paragraph (2)(D)) of the State in which the hospital is located"—and the rural floor

11   statutes—42 U.S.C. § 1395ww(d)(8)(C)(iii) and Section 4410(a) of Public Law 105-

12   33—because 42 U.S.C. § 1395ww(d)(8)(E) does not specify where the wage data of

13   reclassified hospitals must be included and that the rural floor statute also does not

14   specify how the rural floor wage index is to be calculated or what data are to be

15   included in the calculation.  84 Fed. Reg. at 42,332.  The Secretary is wrong, as the

16   Section 1395ww(d)(8)(E) requires that an urban hospital reclassified as rural must be

17   treated as located in the rural area, and does not carve out the establishment of the

18   rural floor from this mandate.

19   56.   Subsection (d)(8)(E) provides hospitals with a mechanism to reclassify

20   from urban to rural status to enjoy the benefits of being treated as a rural hospital,

21   including receiving the rural wage index.  Specifically, Subsection (d)(8)(E) states

22   that "[f]or purposes of *this subsection*, not later than 60 days after the receipt of an

23   application (in a form and manner determined by the Secretary) from a subsection (d)

24   hospital described in clause (ii), the Secretary shall treat the hospital as being located

25   in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is

26   located."[3]  (Emphasis added.)  "This subsection" refers to Section 1395ww(d), which

27   ────────────────────

28   [3] Under Section 1395ww(d)(2)(D), the term "rural area" means any area outside an
(footnote continued)

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

establishes the IPPS and the many rules that apply under that payment system for inpatient hospital services furnished to Medicare patients.  Clause (ii) of Section 1395ww(d)(8)(E) includes hospitals in an urban area that satisfy any of the following criteria:

(I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).

(II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).

(III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.

(IV) The hospital meets such other criteria as the Secretary may specify.

Thus, Section 1395ww(d)(8)(E) is clear that for purposes of Section 1395ww(d)—all of IPPS—"the Secretary shall treat" an urban to rural reclassified "hospital as being located in the rural area . . . of the State in which the hospital is located.  So for all relevant provisions in Section 1395ww(d) concerning rural hospitals, including the determination of the rural floor, an urban to rural reclassified hospital under Section 1395ww(d)(8)(E) must be treated as rural.

57.    The rural floor statutes—42 U.S.C. § 1395ww(d)(8)(C)(iii) and Section 4410(a) of Public Law 105-33—are both part of and tied to Section 1395ww(d).  The first rural floor provision is established by Section 1395ww(d)(8)(C)(iii) and provides

---

urban area; "urban area" means an area within a Metropolitan Statistical Area (as defined by the Office of Management and Budget) or within such similar area as the Secretary has recognized under subsection (a) by regulation.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

that certain reclassifications under the Medicare statute, including geographic reclassifications, "may not result in the reduction of any county's wage index to a level below the wage index for rural areas in the State in which the county is located." The first rural floor provision at Section 1395ww(d)(8)(C)(iii) is clearly a provision within Section 1395ww(d). This means that urban to rural reclassified hospitals under Section 1395ww(d)(8)(E), must be treated as being located in the rural area of the State for purposes of Section 1395ww(d)(8)(C)(iii). Because urban to rural reclassified hospitals are to be treated as rural for all purposes under Section 1395ww(d), the reclassified hospitals' wage data must be used to calculate this rural floor, since it is data of a hospital located in "rural areas in the State." Thus, under this rural floor provision, reclassified rural hospitals' wage data are required by statute to be included for purposes of calculating and applying the rural floor.

58.     The second rural floor provision is established by Section 4410(a) of Public Law 105-33, which provides that, "[f]or purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index applicable under such section to any hospital that is not located in a rural area (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww(d)(2)(D))) may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located." The second rural floor provision is also a provision within Section 1395ww(d), as it concerns the application of Section 1395ww(d)(3)(E). Section 1395ww(d)(8)(E) requires, therefore, that hospitals that reclassify from urban to rural under Section 1395ww(d)(8)(E) must be treated as rural for all purposes related to Section 4410(a) of Public Law 105-33 concerning the wage index statute at Section 1395ww(d)(3)(E). Because reclassified hospitals are to be treated as rural for all purposes under Section 1395ww(d), the reclassified hospitals' wage data must be used to calculate this rural floor, since it is data of a hospital located in "rural areas in the State." Under this second rural floor provision, reclassified rural hospitals' wage

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

data are required to be included for purposes of calculating and applying the rural floor, too.  Therefore, urban to rural reclassified hospitals must be treated as rural for all purposes related to the application of the rural floors, including the inclusion of their wage data in the rural floor calculation.

59.    In sum, the Rural Floor Data Exclusion Policy is contrary to the plain language of Section 1395ww(d)(8)(E) because it creates a distinction in the treatment of rural hospitals—the use of their data in the rural floor calculation—that does not exist under the law, as Section 1395ww(d) does not distinguish between hospitals being geographically rural or hospitals that are rural due to reclassification under Section 1395ww(d)(8)(E).

**(2)    The Secretary's Rural Floor Data Exclusion Policy Is Contrary to the Plain Language of the Rural Floor Provisions**

60.    Both rural floor statutory provisions require that the wage index for the affected hospitals not be less than the precise same area wage index ("AWI") that applies to hospitals physically located in rural areas of the applicable state.  The Rural Floor Data Exclusion Policy violates this requirement because it results in certain hospitals, including all of the Hospitals,  having a wage index applied in computing its IPPS payments that is lower than the wage index applied to hospitals located in the rural areas of the applicable state.

61.    Section 1395ww(d)(8)(C)(iii) requires that certain reclassifications, including a geographic reclassification, do not result in a wage index that is "below the wage index for rural areas in the State in which the county is located."  Similarly, Section 4410(a) of Public Law 105-33 requires that the wage index for an urban area "may not be less that the area wage index applicable. . . to hospitals located in rural areas in the State in which the hospital is located."  Pursuant to the FFY 2020 IPPS Final Rule, the Secretary has included the data from reclassified urban hospitals in determining the wage index applicable to hospitals that are physically located in a rural area, but excluded such data in determining the rural floor, resulting in a rural

24

floor that is lower in certain states than the wage index applied to hospitals located in rural areas of the state. However, both rural floor provisions plainly require that the wage index for the applicable urban areas (those affected by a reclassification under section 1395ww(d)(8)(C)(iii) and all urban areas under Section 4410(a)) may not be less than the wage index for hospitals physically located in a rural area of the State. Accordingly, the rural floor must be the same as the rural wage index in the State for hospitals physically located in rural areas, and those wage indexes include data from reclassified urban hospitals.

62. The result of the Rural Floor Data Exclusion Policy is that the wage index value applied to hospitals located in rural areas of California in FFY 2020 is 1.3189, while the rural floor area wage index value is 1.2645. This difference in area wage index values violates the plain language of the rural floor statutes.

**(3)    The Secretary's Rural Floor Data Exclusion Policy Contradicts Relevant Case Law to Which the Secretary Has Acquiesced**

63. This is not the first time that the Secretary has sought to create a distinction between the treatment of geographically rural hospitals and rural hospitals that reclassified under Section 1395ww(d)(8)(E). However, after decisions in *Geisinger Community Medical Center v. Secretary, United States Department of Health and Human Services*, 794 F.3d 383 (3d Cir. 2015) and *Lawrence + Memorial Hospital v. Burwell*, 812 F.3d 257 (2d Cir. 2016), in which the Second and Third Circuits each found that a hospital that reclassifies from urban to rural under Section 1395ww(d)(8)(E) shall be treated as a rural hospital for all purposes under Section 1395ww(d), including for wage reclassification, the Secretary acquiesced to these decisions and revised the regulation in order to eliminate the creation of the improper distinction. For the same reasons as addressed by the Third and Second Circuits, and acquiesced to by the Secretary previously, the Rural Floor Data Exclusion Policy is contrary to the plain language of the Medicare statute and should be set aside.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

6017820.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

**(4)** **The Secretary's Rural Floor Data Exclusion Policy Was Implemented in Further Violation of the Medicare Act**

64.     Section 42 U.S.C. §1395hh(a) requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing . . . the payment for service . . . shall take effect unless it is promulgated by the Secretary by regulation. . . ."  The Secretary did not promulgate a regulation to effectuate the Rural Floor Data Exclusion Policy, but merely applied it to the calculation of the rural floor and wage index as stated in the preamble to the Final Rule.  As explained above, the Secretary lacks the statutory authority to implement the Rural Floor Data Exclusion Policy under applicable Medicare statutes.  However, even if the Secretary had such authority, it was implemented in a way that violates the statutory requirements of 42 U.S.C. § 1395hh(a) and therefore is invalid.

**B.** **_The Secretary Has Failed to Provide a Valid Rationale for the Rural Floor Data Exclusion Policy in Violation of the APA_**

65.     Under the APA, the Secretary is prohibited from taking actions and making findings and conclusions that are arbitrary and capricious, and conduct is considered arbitrary and capricious when it is not explained, or when it is not rationally explained.  5 U.S.C. § 706(2)(A).  Agency action is considered arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  _Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co._, 463 U.S. 29, 43 (1983).  The Secretary's rationale for the Rural Floor Data Exclusion Policy violates the APA.

66.     Despite acknowledging that broader wage index reform must come from Congress, to justify the adoption of the Rural Floor Data Exclusion Policy in the FFY 2020 IPPS Final Rule, the Secretary stated that "as a result of hospital actions not

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

envisioned by Congress, the rural floor is resulting in significant disparities in wage index" and that the policy was "necessary and appropriate to address the unanticipated effects of rural reclassifications on the rural floor and the resulting wage index disparities, including the effects of the manipulation of the rural floor by certain hospitals." *Id.* at 42,332-34. However, it is ahistorical for the Secretary to suggest that Congress could not have predicted the impact of rural reclassification on the rural floor. Section 1395ww(d)(8)(E) was inserted into the Medicare statute ***after*** both rural floor provisions were added to it. There is no basis for the Secretary to assert that Congress did not know what it was doing when it mandated that urban to rural reclassified hospitals be treated as rural for all purposes under Section 1395ww(d), which already included the rural floor provisions. Therefore, the Secretary's offered explanation for why it was proper to institute the Rural Floor Data Exclusion Policy runs counter to the evidence before the agency and is thus, arbitrary and capricious. Moreover, the Secretary's rationale for the Rural Floor Data Exclusion Policy is unsupported by any data or studies, and the Secretary also relied on factors that Congress has not intended or permitted him to consider.

67. Similarly, under the APA, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The Secretary is obligated to carry out the intent of Congress as demonstrated by the plain language of the applicable statutes. The Secretary does not have the authority to ignore portions of the Medicare statute, and is therefore, acting in excess of statutory authority. If there is something to fix, as the Secretary contends, then it is up to Congress to make such a change. Thus, the Rural Floor Data Exclusion Policy violates the APA and is invalid.

**FIRST CAUSE OF ACTION**

**Violation of the APA and the Medicare Act - The Rural Floor Data Exclusion Policy is Contrary to the Rural Reclassification Law**

68.     The Hospitals repeat and reallege paragraphs 1-67 as if set forth fully herein.

69.     The APA prohibits actions, findings or conclusions by the Secretary that are not in accordance with law or are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(A) and (C).

70.     The Secretary lacks the statutory authority to apply the Rural Floor Data Exclusion Policy in FFY 2020.  The Medicare Act and regulations prescribe precise payment methodologies under the IPPS, including with regard to AWIs and the impact of rural floors on such AWIs.  The Rural Floor Data Exclusion Policy directly contravenes the plain language of 42 U.S.C. § 1395ww(d)(8)(E), and the implementing regulations, which require the Secretary to treat hospitals that reclassify from urban to rural as located in the rural part of the state for purposes of the IPPS, including the rural floor provisions.  Because the Rural Floor Data Exclusion Policy violates 42 U.S.C. § 1395ww(d)(8)(E) (and the implementing regulations), neither this statute, nor any other provision of law authorizes the implementation of the Rural Floor Data Exclusion Policy.

**SECOND CAUSE OF ACTION**

**Violation of the APA and Medicare Act - The Rural Floor Data Exclusions Policy is Unlawful Under the Rural Floor Provisions**

71.     The Hospitals repeat and reallege paragraphs 1-70 as if set forth fully herein.

72.     The APA prohibits actions, findings or conclusions by the Secretary that are not in accordance with law or are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(A) and (C).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

6017820.5

73.     The Secretary lacks the statutory authority to apply the Rural Floor Data Exclusion Policy in FFY 2020.  The Medicare Act and regulations prescribe precise payment methodologies under the IPPS, including with regard to AWIs and the impact of rural floors on such AWIs.  The Rural Floor Data Exclusion Policy directly contravenes the plain language of the rural floor provisions, as both rural floor provisions require that the wage index for the applicable urban areas (those affected by a reclassification under section 1395ww(d)(8)(C)(iii) and all urban areas under Section 4410(a)) may not be less than the wage index for hospitals physically located in a rural area of the State.  Because the Rural Floor Data Exclusion Policy results in hospitals in certain states, including California for FFY 2020, having a wage index applied in computing their Medicare payments that is lower than the wage index applied to hospitals physically located in rural areas of the State, it violates the rural floor provisions and 42 U.S.C. § 1395ww(d)(8)(E), and thus, must be set aside as invalid under the Medicare Act and the APA.

## THIRD CAUSE OF ACTION

### Violation of the APA and the Medicare Act - The Rural Floor Data Exclusion Policy is Arbitrary and Capricious

74.     The Hospitals repeat and reallege paragraphs 1-73 as if set forth fully herein.

75.     The APA prohibits actions, findings or conclusions by the Secretary that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

76.     Despite acknowledging that broader wage index reform must come from Congress, to justify the adoption of the Rural Floor Data Exclusion Policy in the FFY 2020 IPPS Final Rule, the Secretary stated that "as a result of hospital actions not envisioned by Congress, the rural floor is resulting in significant disparities in wage index" and that the policy was "necessary and appropriate to address the unanticipated effects of rural reclassifications on the rural floor and the resulting wage index

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

29

6017820.5

disparities, including the effects of the manipulation of the rural floor by certain hospitals." *Id.* at 42,332-34. However, it is ahistorical for the Secretary to suggest that Congress could not have predicted the impact of rural reclassification on the rural floor. Section 1395ww(d)(8)(E) was inserted into the Medicare statute *after* both rural floor provisions were added to it. There is no basis for the Secretary to allege that Congress did not know what it was doing when it mandated that urban to rural reclassified hospitals be treated as rural for all purposes under Section 1395ww(d), which already included the rural floor provisions. Therefore, the Secretary's offered explanation for why it was proper to institute the Rural Floor Data Exclusion Policy runs counter to the evidence before the agency and is thus, arbitrary and capricious. Moreover, the Secretary's rationale for the Rural Floor Data Exclusion Policy is unsupported by any data or studies, and the Secretary also relied on factors that Congress has not intended or permitted him to consider. As such, the Rural Floor Data Exclusion Policy is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Thus, the Rural Floor Data Exclusion Policy is invalid and must be set aside.

## FOURTH CAUSE OF ACTION

### Violation of the APA - The Rural Floor Data Exclusion Policy is in Excess of Statutory Authority

77.    The Hospitals repeat and reallege paragraphs 1-76 as if set forth fully herein.

78.    The APA prohibits actions, findings or conclusions by the Secretary that are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

79.    The Rural Floor Data Exclusion Policy is unlawful and must be set aside because it is made in excess of statutory authority. The Secretary is obligated to carry out the intent of Congress as demonstrated by the plain language of the applicable statutes, Section 1395ww(d)(8)(E) and the rural floor provisions. The Secretary does

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

30

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

1   not have the authority to ignore portions of the Medicare statute in implementing his

2   Rural Floor Data Exclusion Policy, and is therefore, acting in excess of statutory

3   authority.  If there is something to fix, as the Secretary contends, then it is up to

4   Congress to make such a change.  Thus, the Rural Floor Data Exclusion Policy

5   violates the APA and is invalid.

### FIFTH CAUSE OF ACTION

**Violation of the APA and the Medicare Act - The Secretary Exceeded Statutory Authority Because the Rural Floor Data Exclusion Policy Was Not Promulgated as a Regulation**

80.    The Hospitals repeat and reallege paragraphs 1-79 as if set forth fully herein.

81.    The APA prohibits actions, findings or conclusions by the Secretary that are not in accordance with law or are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(A) and (C).

82.    Section 42 U.S.C. § 1395hh(a) prohibits any rule or policy that establishes or changes a substantive legal standard governing the payment for service, unless it is promulgated by the Secretary by regulation.  The Secretary did not promulgate a regulation to effectuate the Rural Floor Data Exclusion Policy, but merely applied it to the calculation of the rural floor and wage index as stated in the preamble to the Final Rule.  Accordingly, the Rural Floor Data Exclusions Policy was implemented in a way that violates the statutory requirements of 42 U.S.C. § 1395hh(a), thereby violating the APA and the Medicare Act.  Therefore the Rural Floor Data Exclusion Policy is invalid and must be set aside.

### SIXTH CAUSE OF ACTION

### Mandamus

83.    The Hospitals repeat and reallege paragraphs 1-82 as if set forth fully herein.

84.    The Secretary has the non-discretionary duty to pay the Hospitals fully at the amounts to which they are entitled under the law, without applying the Rural Floor Data Exclusion Policy, which violates the Medicare Act, and implementing regulations, and the APA.  Under 28 U.S.C. § 1361, the Hospitals are entitled to have this Court issue a writ of mandamus requiring the Secretary to order the Hospitals' MACs to make new determinations for FFY 2020 to reverse the effect of applying the Rural Floor Data Exclusion Policy, and pay appropriate underpayment interest thereon pursuant to 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## SEVENTH CAUSE OF ACTION
### All Writs Act

85.    The Hospitals repeat and reallege paragraphs 1-84 as if set forth fully herein.

86.    The Secretary's implementation of the Rural Floor Data Exclusion Policy violated the Medicare Act and APA.  The Hospitals are entitled to their full payment under IPPS, without the payment reduction caused by the Rural Floor Data Exclusion Policy.  Under the All Writs Act, 28 U.S.C. § 1651, and other authority, the Hospitals are entitled to issuance of an order requiring the Secretary to order the Hospitals' MACs to make new determinations for FFY 2020 to reverse the effect of applying the Rural Floor Data Exclusion Policy, and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

## REQUEST FOR RELIEF

**WHEREFORE**, the Hospitals pray for judgment as follows:

1.    An order by this Court declaring invalid and vacating the Rural Floor Data Exclusion Policy for FFY 2020 and setting aside the portion of the FFY 2020 IPPS Final Rule that imposed the Rural Floor Data Exclusion Policy;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

2.     An order by this Court requiring the Secretary to recalculate the Hospitals' FFY 2020 IPPS payments after removing the effect of the Rural Floor Data Exclusion Policy, and make the additional FFY 2020 IPPS payments due to the Hospitals plus interest calculated under 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d);

3.     For legal fees and costs of suit incurred by the Hospitals; and

4.     For such other relief as this Court deems just and proper.

Dated: October 8, 2020                Respectfully submitted,

HOOPER, LUNDY & BOOKMAN, P.C.


By:     */s/ Lloyd A. Bookman*
                Lloyd A. Bookman


Attorneys for Plaintiffs

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CA 90067
T: (310) 551-8191 F: (310) 551-8181

Complaint for Declaratory and Injunctive Relief and for Sums Due Under the Medicare Act

6017820.5